IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | 1:05-CR-118 |
| v. | ) | 1:05-CR-119 |
| | ) | |
| CORDELL BERRY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, Cordell Berry, has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), asking the Court to reduce his sentence to time served. He contends that the statutory sentencing changes for successive § 924(c) charges constitute extraordinary and compelling circumstances. Doc. 127 at 9.[1] A time-served sentence does not meet the concerns in the § 3553(a) sentencing factors. The motion will be denied without prejudice to reconsideration in the future.

### I. Crimes of Conviction and Sentencing

In January and February 2005, when he was 28 years old, Mr. Berry robbed two banks about four weeks apart. Doc. 95 at ¶ 1.[2] In both robberies, Mr. Berry brandished a handgun. *Id*. In the first robbery, on January 19, 2005, a masked Mr. Berry entered a Bank of America in Salisbury with a small caliber handgun and began yelling "This is a

---

[1] Unless otherwise indicated, all record citations are to Case No. 1:05-cr-118-1.
[2] The Court has adopted the presentence investigation report without alteration. Doc. 100 at 1.

stick up" and demanding money. *Id*. at ¶ 4. He ordered several people in the bank to get on the floor and pointed his gun at one of the tellers. *Id*. After taking approximately $14,000, he escaped from the bank in a stolen car. *Id*.

The second robbery occurred on February 25, 2005, when Mr. Berry, again wearing a mask, entered Central Carolina Bank in Salisbury with a handgun. *Id*. at ¶ 5. He ordered the customers and employees to the ground while waving his gun around. *Id*. He took approximately $8,900 before exiting the bank. *Id*.

Mr. Berry was arrested on March 1, 2005, on an outstanding state probation violation warrant. *Id*. at ¶ 8. He has been detained in federal custody since June 24, 2005. *Id*. at 1.

A federal grand jury returned separate indictments against Mr. Berry for the pair of armed robberies.[3] Count One of each indictment charged Mr. Berry with bank robbery, in violation of 18 U.S.C. § 2113(a); Count Two charged armed bank robbery, in violation of 18 U.S.C. § 2113(d); and Count Three charged Mr. Berry with carrying and using, by brandishing, a firearm during the bank robberies, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

Mr. Berry pled guilty to some of the charges pursuant to a plea agreement, Doc. 13, but before sentencing the court granted Mr. Berry's motion to withdraw his guilty plea. Minute Entry 09/15/2005. Before trial, he sent a letter from jail to his witnesses and asked them to provide false testimony. Doc. 95 at ¶ 11. In December 2005, a jury

---

[3] *See* Case No. 1:05-cr-118-1; Case No. 1:05-cr-119-1.

returned a guilty verdict on all counts in both indictments. Minute Entry 12/15/2005; Doc. 50.

At his sentencing hearing in January 2006,[4] the court found Mr. Berry to be a career offender because of previous South Carolina convictions for possession with intent to distribute crack cocaine and felony resisting arrest and assaulting an officer. Doc. 71 at 6; Doc. 95 at ¶ 36. This increased his base offense level from 27 to 34. Doc. 95 at ¶¶ 35–36. His criminal history category was VI, even without the enhancement. *Id*. at ¶ 53. His guideline range for both armed robberies was 262 to 327 months; he also faced an 84-month consecutive sentence for the first § 924(c) conviction and another consecutive sentence for 300 months on the second § 924 conviction. This made the total guideline range 646 to 711 months. Doc. 71 at 5; Doc. 100 at 1.

The court gave him an active sentence at the bottom of the guideline range of 646 months imprisonment, followed by a total of 3 years of supervised release: 262 months as to each armed bank robbery count, to run concurrently; 84 months as to the first § 924(c) count and consecutive to the armed bank robbery counts; and 300 months as to the second § 924(c) count to run consecutively to the armed bank robbery counts and the first § 924(c) count.[5] Doc. 56 at 2. The two § 924(c) convictions account for 384 months, or almost 60% of his total sentence. The Fourth Circuit affirmed his conviction and sentence. *United States v. Berry*, 251 F. App'x 183 (4th Cir. 2007).

---

[4] The sentencing judge has retired, and the case has been reassigned to the undersigned.

[5] The bank robbery charges in Count One of each indictment merged with the armed bank robbery counts as lesser-included offenses. Doc. 56 at 2.

3

## II. The First Step Act Changes the Law

In 2018, Congress passed the First Step Act, which, among other things, amended § 924(c) so that the 25-year mandatory minimum for a second or subsequent offense applies only if the offense occurs after a prior § 924(c) conviction has become final. First Step Act, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5221–22 (2018); *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). The changes to this provision of the First Step Act do not apply retroactively. *Jordan*, 952 F.3d at 174. The Fourth Circuit has held that this change in the law is, however, an appropriate factor to consider as part of a § 3582(c)(1)(A) motion. *United States v. McCoy*, 981 F.3d 271, 285–86 (4th Cir. 2020).

Mr. Berry committed the crime of violence underlying his second § 924(c) conviction in February 2005, Doc. 95 at ¶ 1, and his first § 924(c) conviction was not final until September 2008, at the earliest, when the mandate issued. Doc. 79. If sentenced under today's laws, Mr. Berry would be subject to a seven-year mandatory minimum sentence instead of a 25-year mandatory minimum sentence for the second § 924(c) conviction. 18 U.S.C. § 924(c)(1)(A)(ii). Thus, if sentenced to the same 262-month sentence on the two robberies, which was at the bottom of the guideline range, he would face a minimum total sentence of 430 months.

## III. Other Relevant Facts

As the career offender enhancement shows, the two bank robberies leading to his federal convictions were not Mr. Berry's first brush with the law. At age 18, Mr. Berry was convicted of felony possession with intent to distribute crack cocaine. Doc. 95 at ¶ 44. He received a suspended five-year sentence and three years of probation, which

4

was later revoked. *Id*. Four years later, at age 22, he was convicted of felony resisting arrest. *Id*. at ¶ 46. He served a two-year active sentence, followed by three years on probation; he again violated probation and served another year of imprisonment. *Id*. He was in and out of trouble for various misdemeanors until he committed the instant offenses in 2005. *See id*. at ¶¶ 47–50.

Mr. Berry is now 45 years old. He is scheduled for release on August 1, 2051. *See Find an inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Sept. 15, 2021). While in prison he has had multiple disciplinary infractions for insolence to staff, as well as several serious infractions for fighting, assault, and possession of a dangerous weapon. Doc. 129 at 1–2. His last infraction was over six years ago in May 2015. *Id*. at 1. He has accumulated a fairly small number of education hours relative to his time in custody—barely over 100 hours. *Id*. at 3. He began working as an orderly on December 1, 2020. *Id*.

If released, he intends to accept a place into an inpatient residential program at S&H Youth and Adult Services, where he will receive housing and access to various local job opportunities. *Id*.; *see also* Doc. 127-3. He hopes to become a state-certified peer support specialist, Doc. 127 at 17, and he has submitted many letters from family and friends who have agreed to support his return to the community. Docs. 127-2, 127-3, 127-5, 127-6. Probation spoke with the director of the S&H program, who advised that it is a 120-day program and is currently at full capacity. Doc. 129 at 3. Mr. Berry asserts that he has reached an understanding with the program's director that would allow

5

temporary accommodation if he were released. Doc. 131 at 9 n.9. It is unclear where he intends to live and work after the program ends.

## IV. Compassionate Release Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *United States v. Goodwyn*, 596 F.3d 233, 235–36 (4th Cir. 2010). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permit it to do so. *See* 18 U.S.C. § 3582(c).

Section 3582(c)(1)(A), often somewhat inaccurately called the "compassionate release" statute, is one such statutory provision. For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the defendant must first satisfy the administrative exhaustion requirement. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). The defendant must then show that extraordinary and compelling reasons warrant such a reduction, that the reduction is consistent with applicable policy statements issued by the Sentencing Commission, and that the relevant § 3553(a) sentencing factors merit a reduction. *See McCoy*, 981 F.3d at 275.

On January 11, 2021, counsel submitted a written reduction-in-sentence request to the warden at FCI Pollock, where Mr. Berry is housed, asking the BoP to move for a reduction of Mr. Berry's sentence. The warden denied the request on February 2, 2021. Mr. Berry has exhausted administrative requirements, as the government acknowledges. Doc. 130 at 5 n.4.

Mr. Berry contends that the severity of his sentence coupled with its disparity relative to those who are sentenced today constitute extraordinary and compelling

6

circumstances that warrant a sentence reduction. *See* Doc. 127 at 6–7. Specifically, he contends that the Fourth Circuit in *McCoy* recognized the statutory sentencing changes for successive § 924(c) charges as grounds for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *Id.* at 6.

If Mr. Berry were sentenced today, post-First Step Act, he would not be subject to the 25-year mandatory consecutive sentence imposed for second or successive § 924(c) convictions. *See also* Doc. 130 at 14 (government brief acknowledging "the new § 924(c) regime"). The statutory minimum penalty for his § 924(c) convictions would be 14 years rather than 32 years. If those 14 years were stacked on top of the 262 months imposed for the robberies, his sentence would be 430 months, not 646 months.

But, as the government correctly observes, defendants serving stacked § 924(c) sentences are not automatically entitled to relief under § 3582(c)(1)(A). Judgments in this context must be the "product of individualized assessments of each defendant's sentence." *McCoy*, 981 F.3d at 286.

The sentencing court had great familiarity with Mr. Berry and his cases. *See Gall v. United States*, 552 U.S. 38, 51–52 (2007). The sentencing transcript reflects the serious consideration given to the guidelines, the mandatory minimums, and the § 3553(a) factors. The Court noted that it was "dealing with as violent a bank robbery as I've seen," noting that there were "not one, but two" robberies that were "violent" and "frightening." Doc. 71 at 7. Elsewhere the Court observed that "this certainly is in the top two of the violent bank robberies that I have seen . . . in the years that I've been on the court." *Id.* at 9. The sentencing court reflected on whether this was "a life sentence

7

case," recognizing that even a low-end guideline sentence plus the mandatory consecutive sentences would essentially be that. *Id*. at 11–12. The Court rejected the argument that the career offender status overstated Mr. Berry's criminal history, *id*. at 19, and that the statutorily required minimum sentence of 32 years was sufficient. *Id*. at 5–6 (noting defense counsel's argument).

After sentencing Mr. Berry to a sentence at the bottom of the guidelines for the robberies plus the two consecutive mandatory sentences for brandishing the firearms, the court explicitly stated that it did not "see any reason to depart below the guidelines or a way to find that the guidelines would be unreasonable in this case." *Id*. at 20, 22.

If this Court imposed the same sentences for Mr. Berry's robbery convictions and reduced his second § 924(c) sentence to reflect the law today, his total sentence would be 430 months. While that would certainly be a significant departure from his current 646-month sentence, it is well more than the 192 months he has served to date. *See* Doc. 130-1 at 4. Indeed, a time-served sentence would be less than half of the sentence he would likely receive today for the same crimes. It would be shorter than the bottom-of-the-guidelines sentences he received for just the two robberies, let alone the mandatory minimums required today for the two § 924(c) convictions. And it would be well shorter than any sentence the sentencing judge contemplated as possibly appropriate.

Given the nature and circumstances of the offenses, which were "violent" and "frightening," the efforts by Mr. Berry to suborn perjury, and his age and criminal record at the time of these crimes, a time-served sentence would be inappropriate. It would not take into account the need for just punishment, nor would it promote respect for the law

8

or protect the public. Therefore, to the extent that Mr. Berry asks the Court to reduce his sentence to time-served, the motion is denied.

*McCoy* clarified that courts may consider non-retroactive changes to statutory minimums in determining whether extraordinary and compelling circumstances warranting a sentence reduction exist, but the contours of that consideration are uncertain. As to Mr. McCoy, for example, the judge who granted the § 3582(c)(1)(A) motion was the sentencing judge, and at the original sentencing he had "alluded to the inappropriate nature of the 'stacked' penalties." *McCoy v. United States*, No. 2:03-CR-197, 2020 WL 2738225, at *5 (E.D. Va. May 26, 2020), *aff'd,* 981 F.3d 271 (4th Cir. 2020); *see also United States v. Brown*, 457 F. Supp. 3d 691, 702 (S.D. Iowa 2020) (granting compassionate release and noting that even the sentencing judge believed the "additional 300 months' imprisonment from the second § 924(c) count was 'far greater than was necessary to achieve the ends of justice.'"). In *McCoy,* the defendant was much younger when he committed his crimes than Mr. Berry was, and he did not have the criminal record that Mr. Berry had. *See McCoy*, 981 F.3d at 277.

To the extent Mr. Berry asks for his sentence to be reduced to something less than his current sentence, the Court will deny the motion without prejudice. On the current record, the Court would not contemplate reducing the sentence to less than the low-end-of-the-guidelines sentence imposed by the sentencing judge on the robberies, plus two consecutive sentences at the current statutory minimums for the firearms offenses. That would be a sentence of 430 months. It is not clear that such a reduction would be appropriate at all, as there are few significant reasons for the reduction beyond the non-

9

retroactive change in the law. *See, e.g., McCoy*, 981 F.3d at 286 (noting many other reasons for a reduction in addition to the change in the law.). Even if a reduction is appropriate, it is very possible a minimum sentence would not be a long enough sentence, given the violence of the bank robberies and other aggravating factors.

Rather than decide now on whether a sentence reduction is appropriate and, if so, the extent, the Court concludes it is better to deny the motion without prejudice to a renewed motion in a few years, when Mr. Berry is closer to serving the minimum sentence that the Court could even begin to contemplate at the moment. *See United States v. Hancock*, No. 06-CR-206-2, 2021 WL 848708, at *4–6 (M.D.N.C. Mar. 5, 2021) (denying compassionate release motion to reduce defendant's § 924(c) stacked sentences without prejudice to later renewal).

This approach has many benefits. It is likely the case law will develop to provide successor judges with more direction and the Court may by then have guidance from the Sentencing Commission on how to evaluate these kinds of motions, as contemplated by Congress. Developing conflicts between and among the Courts of Appeals on the scope of a § 3582(c)(1)(A) motion may be resolved.[6] The record will show whether he has continued his positive rehabilitation efforts, avoided further disciplinary sanctions, and developed a better long-term release plan.

---

[6] *See, e.g., United States v. Andrews*, ___ F.4th ___, ___, No. 20-2768, 2021 WL 3852617, at *5 (3d Cir. Aug. 30, 2021) (summarizing varying decisions on how to appropriately evaluate statutory changes to § 924(c) when deciding a § 3582(c)(1)(A) motion); *see also United States v. Hunter*, ___ F.4th ___, ___, No. 21-1275, 2021 WL 3855665, at *6-11 (6th Cir. Aug. 30, 2021).

10

It is **ORDERED** that the defendant's motion to reduce sentence, Doc 114, No. 1:05-cr-119-1; Doc 127, No. 05-cr-118-1, is **DENIED** to the extent the defendant seeks a time-served sentence. It is otherwise **DENIED** without prejudice to renewal once he approaches serving 430 months or if changes or developments in the law support such a renewed motion. Mr. Berry's request for oral argument is **DENIED** as the papers adequately present the issues for resolution and oral argument would not provide significant benefit.

This the 22nd day of September, 2021.

_____
UNITED STATES DISTRICT JUDGE